```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CARSON OPTICAL, INC.,

                          Plaintiff,              MEMORANDUM AND
        -against-                                 ORDER

RQ INNOVASION INC. and BRENDAN                    16-CV-1157 (SIL)
ZHENG,

                          Defendants.
-----------------------------------------------------------------x
```

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this false advertising/deceptive trade practices action, brought pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*. and New York state law, is the issue of whether Defendant Brendan Zheng ("Zheng"), who owns Defendant/Counterclaim Plaintiff RQ Innovasion Inc. ("RQ," and together with Zheng, "Defendants"), is subject to personal jurisdiction in the instant litigation, commenced by Plaintiff/Counterclaim-Defendant Carson Optical, Inc. ("Carson" or "Plaintiff").[1]  For the reasons set forth below, the Court concludes that he is.

**I.    Background**[2]

This action arises from a dispute between two merchants who sell magnification products throughout the United States:  (i) Carson, a company located in Ronkonkoma, New York that markets and sells various optical goods, including magnifying lenses; and (ii) RQ, a Canadian corporation owned by Zheng, a Canadian

---

[1] As discussed below, Defendants concede that the Court has personal jurisdiction over RQ.

[2] As the parties' familiarity with the underlying facts and procedural history is presumed, the Court sets forth only background material that is directly relevant to the instant Memorandum and Order.

resident, that also sells a variety of devices containing magnifying lenses. *See* Amended Complaint (the "Amended Complaint"), DE [41], ¶¶ 1-4, 9, 19. Each party asserts two causes of action based on the claim that the other overstates the magnification capability of its products: (i) false advertising pursuant to Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125; and (ii) unfair and deceptive trade practices under New York state law. *See generally* Amended Complaint; Amended Answer to Amended Complaint and Counterclaims, DE [49] (the "Counterclaims"). These misrepresentations, each party contends, influence consumers' purchasing decisions and, in turn, cause the other to be damaged by an unlawful competitive disadvantage. *See* Amended Complaint ¶¶ 24, 30; Counterclaims ¶¶ 16, 20.

A jury trial was set to commence on February 3, 2020. *See* DE [92]. At a status conference on January 17, 2020, however, the Court determined that the question of whether Defendants are subject to personal jurisdiction herein needed to be resolved in advance of trial. *See* DE [96]. At that conference, Defendants conceded personal jurisdiction over RQ and stated that they were only challenging the issue with respect to Zheng. *See id.*; *see also* January 17, 2020 FTR Recording at 11:00-11:13.[3] Accordingly, the Court held an evidentiary hearing on February 4, 2020 wherein

---

[3] Defendants originally asserted that this Court lacked personal jurisdiction over both of them in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). *See* DE [34]. That motion was denied by the Honorable Leonard D. Wexler on June 9, 2017, who concluded that the Complaint "states a *prima facie* case for personal jurisdiction over defendants." *See* June 9, 2017 Electronic Order. Defendants renewed their application for dismissal on personal jurisdiction grounds, with respect to Zheng only, in their motion for summary judgment. *See* DE [56]. The Honorable Sandra J. Feuerstein denied that motion in its entirety, finding that genuine disputes of material fact precluded judgment as a matter of law. *See* October 3, 2018 Electronic Order.

Zheng was the only witness (the "Hearing"). *See* DEs [97], [98]; *see also* Transcript of Civil Hearing (the "Hearing Transcript" or "Tr.").

At the Hearing, Zheng testified that he formed RQ in 2014 with a partner who left the company before it entered the magnifying lens business, and that he is now one of two directors along with his brother-in-law Markus Zerulla ("Zerulla"). *See* Tr. 5:16-24; 10:24-11:4. Notwithstanding Zerulla's title, Zheng repeatedly stated that he is the final decisionmaker for RQ in all material respects. *See id.* 13:7-11; 21:13-16; 22:20-24:24; 42:15-24. At Zheng's direction, when RQ began selling magnifying products, it did so primarily through Amazon.com ("Amazon"), s*ee id.* 19:12-14, and he was aware that doing so would likely result in sales throughout the United States, including New York. *See id.* 33:21-34:8; 43:24-44:4. In this regard, Zheng was also responsible for advertising on Amazon and product detail pages, including listing the magnifying power of the products – the types of representations at issue in this case. *See id.* 22:9-23:11; 24:21-26:17; 43:5-6. In terms of sales volume, in a June 2016 declaration, Zheng claimed that less than 6% of sales from Amazon and other websites reached New York, *see* DE [20] ¶ 28, and in a February 2017 declaration he confirmed that a "small fraction" of sales occurred in New York. *See* DE [37] ¶ 2.[4] In other words, there is no dispute that RQ sells magnifying products to New York consumers via Amazon. Further, in terms of overall sales, Zheng testified that he "imagine[s]" RQ's aggregate Amazon sales accounted for millions of dollars in revenue. *See id.* 30:18-23. In addition, Zheng pays himself a salary that is derived,

---

[4] The June 2016 and February 2017 declarations were each admitted into evidence at the Hearing as Plaintiff's Exhibits 2 and 5, respectively. *See* DE [98].

3

at least in part, from RQ's sales on Amazon, including those made in New York. *See id.* 38:1-13.

Following the Hearing, the parties submitted letter briefs setting forth their arguments concerning personal jurisdiction. *See* Carson's Post-Hearing Letter Brief ("Pltf.'s Let."), DE [100]; Defendants' Post-Hearing Letter Brief ("Defs.' Let."), DE [101]; Carson's Reply Letter Brief ("Pltf.'s Opp."), DE [102]; Defendants' Post-Hearing Reply Letter Brief ("Defs.' Opp."), DE [103].

## II.   Legal Standard for Personal Jurisdiction

Where, as here, a case arises under the Lanham Act, "courts apply the forum state's personal jurisdiction rules." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (internal citations omitted). In this regard, courts engage in a two-part inquiry in analyzing whether a defendant is subject to specific personal jurisdiction.[5] *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243-44 (2d Cir. 2007)). Initially, the Court determines "whether Defendants' acts brings them within the reach of [New York's] long-arm statute …." *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). Next, the Court

---

[5] "Specific or case-linked jurisdiction depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)…. This is in contrast to general or all purpose jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." *Walden v. Fiore,* 571 U.S. 277, n. 6, 134 S. Ct. 1115 (2014) (internal quotations, citations, and brackets omitted). Here, Plaintiff asserted only specific jurisdiction. *See generally* Pltf.'s Let.; Pltf.'s Opp.

4

considers whether the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Id.*

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003) (*per curiam*)). The Court, however, "has considerable procedural leeway" in assessing whether personal jurisdiction exists. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Where, as here, the Court conducts a pretrial evidentiary hearing on jurisdictional merits, "the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id.*

### III. Discussion

Applying these standards and for the reasons set forth below, the Court concludes that Plaintiff has established that Zheng is subject to personal jurisdiction in this action pursuant to New York's long-arm statute in accordance with due process principles.

#### A. Long-arm Statute

##### i. NY CPLR § 302(a)(1)

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary … who … (1) transacts any business within the state or contracts anywhere to supply goods and services in the state" if the cause of action stems from such commercial activity. N.Y. C.P.L.R. § 302(a)(1). Thus, "[t]o establish personal jurisdiction under section 302(a)(1), two requirements must be

met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Brady v. Anker Innovations Ltd.*, No. 18-cv-11396, 2020 WL 158760, at *4 (S.D.N.Y. Jan. 13, 2020) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).

"A party need not be physically present in the state for the court to obtain personal jurisdiction." *EnviroCare Techs.*, 2012 WL 2001443, at *2 (citing *Chloé*, 616 F.3d at 169). "Rather, New York courts define transacting business as purposeful activity – some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Best Van Lines, Inc.,* 490 F.3d at 246 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38 (1967)) (internal quotations omitted). Section 302(a)(1) "is a 'single act statute,' *i.e.*, 'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities [in the State] were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Brady*, 2020 WL 158760, at *4 (quoting *Chloé*, 616 F.3d at 170) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988) (collecting cases)).

With respect to cases concerning allegedly unlawful sales of products through the internet, "courts apply a 'sliding scale' test based on the level on a website's

6

interactivity." *EnviroCare Techs., LLC*, 2012 WL 2001443, at *3. "[I]f a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *Id.* (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.,* 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000); *Mattel, Inc. v. Adventure Apparel,* No. 00-cv-4085, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001)); *see also Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008) ("Active websites used by New York consumers to purchase an out-of-state defendant's products, [as opposed to passive websites that are not commercial in nature], generally confer personal jurisdiction.") (internal citations omitted).

When the internet sales at issue occur through third-party websites such as Amazon, and the defendants merely post their items on that website and then ship their goods to an Amazon fulfilment center before Amazon ultimately sends the goods to consumers, jurisdiction is still proper. *EnviroCare Techs., LLC*, 2012 WL 2001443, at *3 (citing *Dedvukaj v. Maloney,* 447 F. Supp.2d 813, 818–23 (E.D. Mich. 2006); *Malcolm v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003)); *see also Brady*, 2020 WL 158760, at *5 ("courts within this circuit have concluded that regularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though defendants do not control their Amazon.com storefront or its interactivity to the same extent that they control their own highly interactive website.") (quoting *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-cv-8459, 2016 WL 3748480, at *3 (S.D.N.Y. July 8,

2016)) (internal quotations and brackets omitted). To that end, "[t]he primary consideration is whether the vendor uses the storefront as a means for establishing regular business with a remote forum." *Brady*, 2020 WL 158760, at *5 (quoting *Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3) (quoting *EnviroCare Techs., LLC*, 2012 WL 2001443, at *3)) (internal quotations and brackets omitted). Even if New York sales make up only a small percentage of a defendant's total sales and its website is not directed specifically toward the State, the use of the internet to expand a seller's market "literally to the world" requires a merchant to accept "the concomitant legal responsibilities that such an expanded market may bring with it." *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, No. 15-cv-06478, 2016 WL 7451306, at *3 (S.D.N.Y. Dec. 27, 2016) (citing *EnviroCare Techs., LLC*, 2012 WL 2001443, at *2-4 (internal citations omitted)).

As for the second prong of the long-arm analysis, "[t]he 'arising out of' element requires a 'substantial nexus' between the business transaction and the claim." *Energy Brands Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 31 (2d Cir.1996)); *see also E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18-cv-3217, 2018 WL 6528496, at *4 (S.D.N.Y. Dec. 12, 2018) ("The Second Circuit has held that this second condition requires a showing that the contacts with the state had a 'substantial relationship' to the cause of action.") (quoting *Solé Resort, LLC*, 450 F.3d at 103). Courts in the Second Circuit have found that false advertising and related Lanham Act trademark infringement claims – where products are sold to New York consumers, competitively

8

harming a plaintiff – satisfy the substantial nexus requirement. *See E. Mishan & Sons, Inc.*, 2018 WL 6528496, at *2, 6 (finding that the plaintiff had "easily" established that its false advertising claim was related to the defendants' business transactions in New York in connection with its allegations that the defendants misrepresented the characteristics of their competing products that were sold on at least three occasions to New York customers); *Brady*, 2020 WL 158760, at *5 ("the Court has no trouble determining that Plaintiff's claims arise from its business activity in New York. The crux of Plaintiffs' allegations is that Defendants … deceived consumers about the power capabilities of its products, which were advertised on and sold through [Amazon and] ultimately reached New York state."); *Hypnotic Hats, Ltd.*, 2016 WL 7451306, at *3 ("The second requirement also has been met, as the claims asserted arise from Defendants' business activity in New York. Plaintiff's trademark infringement claims arise out of allegations that Defendants offered and sold the infringing products in New York through their websites.").

Here, RQ's regular use of Amazon to sell its magnifying products throughout the United States, including New York, constitutes transacting business under Section 302(a)(1). *See* Tr. 19:12-14; 33:21-23; 34:5-8; 43:25-44:4; *see Hypnotic Hats, Ltd.*, 2016 WL 7451306, at *3 ("It does not matter that Defendants' New York sales make up a small percental of their total sales…. A single act of shipping a product into the state is sufficient"). Further, these transactions share a substantial nexus with Plaintiff's false advertising claims. Specifically, Plaintiff alleges that RQ's misrepresentations concerning its products' magnifying power influence consumers'

9

purchasing decisions and, in turn, cause Plaintiff to sustain damages by being forced to sell competing goods at an unlawful competitive disadvantage. *See* Amended Complaint ¶¶ 19, 24, 30. Accordingly, RQ's conduct gives rise to personal jurisdiction under Section 302(a)(1) of New York's long-arm statute.

Defendants' argument that RQ's sales to New York consumers are not related to Plaintiff's causes of action because the purchasers themselves are not asserting claims, *see* Defs.' Let. at 4, is without merit. To that end, their reliance on *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983), misses the mark. Indeed, "Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff … *or commits a commercial tort* against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Id.* (internal citations omitted) (emphasis added). In *Menzies*, the plaintiff did "not allege that [the defendant's] shipment of goods into New York [was] in any way injurious to it." *Id.* at 765. Here, however, Carson claims that RQ committed the commercial tort of false advertising against it *in the course* of selling products to non-party New York consumers. Specifically, Plaintiff claims that RQ's misrepresentations on Amazon concerning the specifications of its magnifying products deceived New York consumers into buying goods that were inferior to those advertised and, as a result, caused Carson to suffer a competitive disadvantage.

The Court further rejects Defendants' contention that Carson failed to establish personal jurisdiction with respect to each individual product at issue in this litigation. *See* Defs.' Opp. at 2. Notably, Defendants argue that specific jurisdiction

must be established for each *cause of action* asserted. *See id*. (citing *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 460 (S.D.N.Y. 2007) ("personal jurisdiction must be determined on a claim-by-claim basis"); *New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 311 (E.D.N.Y. 2014) (when relying on specific jurisdiction, "personal jurisdiction … must be analyzed individually for each cause of action.") (internal citations omitted)). Here, the Amended Complaint does not contain an individual claim for each purportedly falsely advertised product but, rather, merely asserts two causes of action alleging that Defendants' overstatement of a litany of RQ's products' magnifying power constitutes false advertising under the Lanham Act and unfair competition pursuant to New York State law. *See* AC ¶¶ 17-39. As discussed above, those causes of action share a substantial nexus to RQ's business transactions in New York and, as a result, Plaintiff has established specific jurisdiction for each "claim" at issue.

    ii.    <u>NY CPLR § 302(a)(3)</u>

In addition to being subject to long-arm jurisdiction under Section 302(a)(1), Defendants are also subject to jurisdiction pursuant to CPLR § 302(a)(3)(ii). Under this provision, "a court in New York may exercise jurisdiction over a non-domiciliary when the defendant (1) committed a tortious act outside New York, (2) that causes injury within New York State, (3) the defendant expects or should reasonably expect the act to have consequences in the state and (4) derives substantial revenue from interstate or international commerce." *Energy Brands Inc.*, 571 F. Supp. 2d at 467

(internal citations omitted). The Court concludes that Carson has established each of these elements.

Initially, the false advertising claim under the Lanham Act and unfair competition cause of action pursuant to New York State law sound in tort. *See, e.g., Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (describing unfair competition under New York law as a tort); *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 236 (2d Cir. 1974) ("§ 43(a) [of the Lanham Act] provided a federal remedy for the tort of 'false advertising to the detriment of a competitor'") (internal citations omitted); *Gleason Works v. Oerlikon Geartec, AG*, 141 F. Supp. 2d 334, 337 (W.D.N.Y. 2001) ("The common-law tort of unfair competition is similar to an unfair competition claim under the Lanham Act."). Further, as discussed above, Carson is located in New York and any injuries it purportedly sustained to its business as a result of Defendants' alleged false advertisements occurred in this State. *See Energy Brands Inc.*, 571 F. Supp. 2d 467 ("This element [of injury caused in New York] has long been interpreted to include harm to a business in the New York market through lost sales or lost customers.") (internal quotation and citations omitted). In addition, Zheng admitted at the Hearing that he expected that his decision to sell RQ's products on Amazon would result in sales to the New York market, *see* Tr. 34:5-8, where it competes with Carson. Finally, although there is some uncertainty with respect to the extent of revenue generated from sales in New York, Zheng testified that he believes RQ's aggregate sales on Amazon (*i.e.*, via interstate commerce) generated millions of

12

dollars in proceeds. *See id*. 30:18-23. Moreover, while Defendants contend that RQ's sales in New York are relatively minimal, *see* Defs.' Let. at 2, they do not dispute that they derive substantial revenue from interstate commerce generally, as required by the statute. Accordingly, RQ's conduct also gives rise to personal jurisdiction under Section 302(a)(3)(ii) of New York's long-arm statute.

iii. <u>Application of the Long-Arm Statute to Zheng</u>

Having concluded that New York's long-arm statute serves as a basis for personal jurisdiction over the conduct carried out through RQ's business, the Court turns to whether the statute applies to Zheng individually. Under New York law, jurisdiction over corporate officers is proper under the State's long-arm statute where those officers are primary actors in the conduct that gave rise to the litigation. *Fallman v. Hotel Insider Ltd*, No. 14-cv-10140, 2016 WL 316378, at *5 (S.D.N.Y. Jan. 15, 2016) (citing *Chloé*, 616 F.3d at 164 ("Section 302(a) … confers jurisdiction over individual corporate officers who supervise and control an infringing activity.") (citing *Kreutter*, 71 N.Y.2d 460, 527 N.Y.S.2d 195); *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988))); *see also EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016) (individual defendant "Robertson was no mere employee of MP3tunes. He was its founder and CEO, and he exercised extensive control over its day-to-day activities. According to one MP3tunes employee, 'no one made any final decisions other than Michael'").

Here, Zheng testified repeatedly that in addition to being RQ's founder and director, he is the final decision-maker for RQ's business, including with respect to

13

product selection, advertising, packaging, and approving product detail pages and manuals, notwithstanding others' involvement in its operations. *See*, *e.g.*, Tr. 13:7-11; 21:13-16; 22:9-26:17; 42:15-24; 43:5-6. More significantly, he admits that it was his choice to sell RQ's magnifying products on Amazon – where the characteristics of the goods were allegedly misrepresented – and that he was aware this decision would result in sales throughout the United States, including in New York. *See id*. 33:21-23; 34:5-8. Finally, Zheng concedes that he benefits from RQ's Amazon sales to New York consumers in the form of his salary. *See id*. 38:1-13. Accordingly, RQ's allegedly unlawful conduct when conducting business on Amazon can be imputed to Zheng for personal jurisdiction purposes.

Defendants' reliance on *Ontel Prod., Inc. v. Project Strategies Corp.,* 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995), for the proposition that the President of a company is not subject to personal jurisdiction merely because he or she *possesses* authority to direct a company's business activities is misplaced. *See* Defs.' Opp. at 2. Specifically, as discussed above, Zheng did not merely have the authority to control RQ but was in fact the individual who decided to conduct business via Amazon, and had final say over the company representations at issue in this case. The Court further rejects Defendants' contention that Zheng is not subject to this Court's jurisdiction because he does not exercise complete control of RQ's operations, *see* Defs.' Let. at 3, in light of his admission that he is RQ's final decision-maker. *See* Tr. 13:7-11; 21:13-16; 22:20-24:24; 42:15-24. Thus, insofar as RQ's marketing and selling of magnifying products via Amazon would confer personal jurisdiction over the company under New York's

14

long-arm statute, that same conduct supports a finding of personal jurisdiction over Zheng. Accordingly, the only remaining issue whether the exercise of personal jurisdiction violates his due process rights.

### B. Due Process

Finally, the exercise of personal jurisdiction over both Zheng and RQ comports with principles of due process. "There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York: (1) the minimum contacts inquiry and (2) the reasonableness inquiry." *Chloé*, 616 F.3d at 171 (citing *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.,* 264 F.3d 32, 37–38 (2d Cir. 2001)). "To establish that Defendants have the requisite minimum contacts with the forum, Plaintiff must show that Defendants purposefully availed themselves of the privilege of doing business in New York." *EnviroCare Techs., LLC*, 2012 WL 2001443, at *4 (citing *Chaiken v. VV Pub. Corp.,* 119 F.3d 1018, 1028 (2d Cir. 1997)). With respect to reasonableness, the "inquiry 'hinges on whether the assertion of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *E. Mishan & Sons, Inc.*, 2018 WL 6528496, at *6 (quoting *Chatwal Hotels & Resorts LLC v. Bollywood Co.*, 90 F. Supp. 3d 97, 107 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)). To that end, courts consider five factors:

> [1] the burden on the defendant, [2] the interests of the forum State … [3] the plaintiff's interest in obtaining relief…. [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies …

and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Chloé*, 616 F.3d at 173 (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112, 107 S. Ct. 1026 (1987)).

Here, RQ's conduct, at Zheng's direction, satisfies the minimum contacts test because the company intentionally marketed and sold its products nationwide, including in New York, through Amazon. *See* Tr. 33:21-23; 43:25-44:4; *E. Mishan & Sons, Inc.*, 2018 WL 6528496, at *6 ("[Defendant's] contacts with New York – causing its [product] to be marketed to, and then shipped to, New York residents – readily qualify as purposeful availment so as to satisfy the minimum contacts test."); *cf. EnviroCare Techs., LLC*, 2012 WL 2001443, at * 4 ("Defendants marketed and sold their products nationwide through Amazon ... and, on at least three occasions, received orders from Plaintiff in New York and arranged for products to be shipped to Plaintiff in New York. Such conduct is sufficient to satisfy due process's 'minimum contacts' inquiry.") (citing *Chloé*, 616 F.3d at 174; *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999)).

"Although a plaintiff's showing of 'minimum contacts' will generally satisfy due process, the defendant can present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *E. Mishan & Sons, Inc.*, 2018 WL 6528496, at *6 (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). Here, Defendants' lone paragraph summarily arguing that it is unreasonable to subject Zheng to personal jurisdiction in New York because it

requires burdensome travel and Carson's "only tie to … New York is that it is here," *see* Defs.' Letter at 6, is unconvincing.

Further, a review of relevant factors set forth above establish that the exercise of personal jurisdiction over Zheng is reasonable. Initially, Defendants' contention that having to travel from Canada to New York constitutes an unreasonable burden fails as a matter of law. *See EnviroCare Techs., LLC*, 2012 WL 2001443, at * 5 ("Defendants' generalized complaints of inconvenience arising from having to defend themselves from suit in New York [when they are located in Oregon] do not add up to a compelling case that … would render jurisdiction unreasonable.") (quoting *Chloé*, 616 F.3d at 173 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 105 S. Ct. 2174 (1985)). The second factor also favors Carson because New York "has a manifest interest in providing effective means of redress for its residents." *Chloé*, 616 F.3d at 173 (quoting *Burger King Corp.,* 471 U.S. at 483, 105 S. Ct. 2174). Plaintiff's interest in obtaining relief in New York satisfies the third factor as it is based in New York, and presumably its witnesses and documentary evidence are here. *See EnviroCare Techs., LLC*, 2012 WL 2001443, at * 5 ("The third factor also favors Plaintiff, as Plaintiff chose New York as a forum, Plaintiff is located in New York, and presumably its witnesses and evidence are located in New York."). The fourth factor favors Carson as well because Defendants have not proposed an alternate forum that could more efficiently resolve the instant controversy. Finally, the fifth factor appears to be neutral, and no party has proffered an argument on this point.

Accordingly, exercising personal jurisdiction over Zheng comports with traditional notions of fair play and substantial justice.[6]

### C. Fed. R. Civ. P. 4(k)(2)

The Court need not address Plaintiff's alternative argument that personal jurisdiction can be asserted against RQ under Fed. R. Civ. P. 4(k)(2). *See* Pltfs.' Let. at 5. Rule 4(k)(2) enables a court to subject a defendant to personal jurisdiction for a claim arising under federal law if the party is not subject to jurisdiction in any state's courts and exercising jurisdiction is consistent with the United States Constitution and laws. *See* Fed. R. Civ. P. 4(k)(2). Because RQ is subject to personal jurisdiction in New York under the State's long-arm statute, Rule 4(k)(2) is inapplicable.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Zheng is subject to personal jurisdiction in this action.

**SO ORDERED**

Dated: Central Islip, New York
March 30, 2020 /s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge

---

[6] The Court notes that the foregoing analysis would lead the Court to conclude that RQ is subject to personal jurisdiction herein regardless of whether Defendants conceded the issue.

18